UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT WILSON, CDCR #H-95157, on behalf of himself and others similarly situated,<br><br>                              Plaintiff,<br>   v.<br><br>EDMUND G. BROWN, et al.,<br><br>                              Defendants. | Case No. 05-cv-1774-BAS-MDD<br><br>**ORDER:**<br><br>**(1) ADOPTING IN PART REPORT AND RECOMMENDATION;**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO DISMISS; AND**<br><br>**(3) DISMISSING PLAINTIFF'S CLASS CLAIM FOR INJUNCTIVE RELIEF** |

   On March 2, 2015, Plaintiff Albert Wilson, an African-American California prisoner, filed a second amended complaint in this putative class action alleging that Defendants deprived him of constitutionally adequate medical care, leading him to develop severe Coccidioidomycosis ("cocci"), also known as valley fever.[1] (Second Amend. Compl. ("SAC"), ECF No. 68.) Plaintiff's second cause of action, the claim

---

[1] According to the Second Amended Complaint, Plaintiff has what is known as "disseminated" valley fever, a severe form of the disease that develops when an initial cocci infection in the lungs spreads to other parts of the body. (SAC 8–12.)

at issue here,[2] is a class claim for injunctive relief against Defendants Edmund G. Brown, the Governor of the State of California; Jeffery A. Beard, the current Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); and Warren L. Montgomery, the acting warden of Calipatria State Prison ("Calipatria"). (SAC 17, 18.) Plaintiff alleges the Defendants are responsible for the operation of Calipatria through their official positions and policy-making authority. (SAC 18:1–9.) Plaintiff brings this claim on behalf of a class of "individual African-American prison inmates who were incarcerated at Calipatria State Prison . . . between 1997 and the present who contracted [valley fever], as a result of exposure to *Coccidioides immitis* spores at Calipatria State Prison." (SAC 5:15–20.)

Plaintiff requests the following injunctive relief:

> (1) [N]otification of inmates at Calipatria State Prison of the presence; signs and symptoms; and potential consequences of Valley Fever so they may be able to protect themselves from infection, or in the event of infection, have the means to seek early medical treatment to prevent disseminated [valley fever]; (2) implementation of appropriate preventative measures to protect inmates from exposure []; and (3) such other and further relief as this Court deems proper.

(SAC 18:10–16.)

On April 6, 2015, Defendants filed a motion to dismiss the operative SAC, arguing, *inter alia*, that Plaintiff lacks standing and that Plaintiff's claim is precluded by the class action in *Plata v. Brown*. (ECF No. 72.) On April 27, 2015, Plaintiff filed his response. (ECF No. 73.) On July 30, 2015, Magistrate Judge Mitchell D. Dembin issued a Report and Recommendation ("Report" or "R&R") finding that Plaintiff's proposed class and requested relief is duplicative of, and thus precluded by, *Plata v.*

---

[2] Plaintiff's Second Amended Complaint (ECF No. 68) sets forth four separate claims, but Plaintiff has yet to serve Defendants Rosie Garcia, P.J. Dupler, and Medical Technical Assistant Irvin against whom he brings causes of action one, three, and four. The Court has placed Plaintiff on notice that these pending causes of action will be dismissed for want of prosecution pursuant to Fed. R. Civ. P. 4(m), absent a showing of good cause why such service was not made. (ECF No. 81.)

*Brown*, and recommending that this Court dismiss Plaintiff's claim. (ECF No. 77.) The R&R does not discuss standing. Plaintiff filed objections to the R&R to which Defendants replied. (ECF Nos. 78, 79.)

For the foregoing reasons, the Court finds *sua sponte* that Plaintiff lacks Article III standing to bring this claim. The Court otherwise **ADOPTS** the magistrate judge's Report (ECF No. 77) and **GRANTS** Defendants' motion to dismiss (ECF No. 72).

## I.  LEGAL STANDARD

The Court reviews *de novo* those portions of an R&R to which objections are made. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* "The statute makes it clear," however, "that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia*, 328 F.3d at 1121; *see also Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) ("Of course, de novo review of a[n] R & R is only required when an objection is made to the R & R.").

Plaintiff objects to the magistrate judge's Report on two grounds. First, Plaintiff argues that the class he seeks to represent is not duplicative of the *Plata* class because it "differs significantly . . . in both class membership and relief." (Pl.'s Obj. 2:14–15.) Second, Plaintiff argues that he has standing to sue for injunctive relief because he satisfies one or both exceptions to mootness: namely (1) his claims are capable of repetition, yet will continue to evade review; and (2) his claims challenge ongoing prison policies to which other inmates will remain subject. (Pl.'s Obj. 2–4.)

Because the magistrate judge assumed without deciding that Plaintiff had standing, the Court addresses *sua sponte* the question of standing before turning to preclusion. *See United States v. Hays*, 515 U.S. 737, 742 (1995) (explaining that federal courts have an independent obligation to ensure that standing exists); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (noting that Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit").

## II.   DISCUSSION

### A. Plaintiff Lacks Standing to Bring His Claim for Injunctive Relief

"Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies."" *Allen v. Wright*, 468 U.S. 737, 750 (1984). This constitutional limit on federal judicial authority requires a litigant to have standing before invoking the power of a federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. at 751. The injury must be "injury in fact"—that is, it must be "concrete and particularized" and "actual or imminent," not conjectural or hypothetical. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000).

A plaintiff may have standing to seek some forms of relief but not others. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing separately for each form of relief sought[.]") (citation omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Where a plaintiff has already suffered an injury from the challenged conduct and seeks injunctive relief to block such conduct in the future, standing doctrine requires the plaintiff to demonstrate "a real and immediate threat of *repeated* injury" as a prerequisite to injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (emphasis added). "Past exposure to illegal conduct" is relevant but "does not in itself show a present

1  case or controversy regarding injunctive relief . . . if unaccompanied by any
2  continuing, present adverse effects." *Id*. At minimum, standing to seek injunctive
3  relief after an injury has already concluded requires a plaintiff to credibly allege that
4  the causal chain leading to that injury, including but not limited to the challenged
5  conduct itself, is likely to reoccur. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S.
6  95, 105–09 (1983) (holding that respondent did not have standing to seek injunctive
7  relief where he did not establish a real and immediate threat of suffering future injury
8  from the alleged illegal conduct). Absent a real and immediate threat of future injury
9  there can be no case or controversy, and thus no Article III standing for a party
10 seeking injunctive relief. *See Friends of Earth*, 528 U.S. at 190 ("[I]n a lawsuit
11 brought to force compliance, it is the plaintiff's burden to establish standing by
12 demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful
13 behavior will likely occur or continue, and that the threatened injury is certainly
14 impending.") (citation and quotation marks omitted).

15      Plaintiff curiously invokes two exceptions to the mootness doctrine to argue
16 that he has standing. This approach, however, confuses the two doctrines. Standing
17 is "[t]he requisite personal interest that must exist at the commencement of the
18 litigation," whereas mootness ensures that standing continues throughout the duration
19 of the litigation. *Friends of Earth*, 528 U.S. at 189 (quoting Henry P. Monaghan,
20 *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)).
21 In the event that the conduct giving rise to a plaintiff's injury ceases during the course
22 of litigation, thereby mooting the controversy, federal courts have developed
23 exceptions to the mootness doctrine to allow for judicial review. *See, e.g.*, *City of Los*
24 *Angeles v. Lyons*, 461 U.S. 95 (1983) (recognizing the rule that a claim does not
25 become moot where it is capable of repetition, yet evades review); *United States v.*
26 *Howard*, 480 F.3d 1005 (9th Cir. 2007) (explaining that a case is capable of repetition
27 when a party is challenging an ongoing government policy). These exceptions to
28 mootness, however, have no bearing on whether a plaintiff has satisfied the

requirements for standing in the first instance. "[I]f a plaintiff lacks standing at the time the action commences," then exceptions to mootness, such as those invoked by Plaintiff here, "will not entitle the complainant to a federal judicial forum." *Friends of Earth*, 528 U.S. at 191.

The question then is not whether an exception to mootness justifies keeping Plaintiff's controversy live, but whether Plaintiff has established standing in the first instance. The answer is he has not. Plaintiff attempts to demonstrate standing to seek injunctive relief by arguing that (1) there is a possibility that he could be transferred back to Calipatria and, if so, would face the same inadequate preventative medical care that led to his disseminated valley fever and (2) even if he is not transferred back to Calipatria, he will still be subject to the CDCR's inadequate healthcare system because his release is not imminent and his condition requires further medical treatment. (Pl.'s Obj. 3.) For several reasons, however, these arguments do not establish the real and immediate threat of future injury, and likelihood of redressability, required for standing.

First, the mere possibility that Plaintiff could be transferred back to Calipatria in the future does not establish a "sufficient likelihood that he will again be wronged" by Calipatria's inadequate medical care. *Lyons*, 461 U.S. at 111. Plaintiff was not incarcerated at Calipatria when he brought this action and has not returned since. (SAC 2:16–22.) Indeed, Plaintiff apparently has not stepped foot in Calipatria for thirteen years. (SAC 7, 8.) He makes no suggestion that he is likely to be transferred back to Calipatria. Nor does Plaintiff suggest he has any knowledge or awareness of the current state of medical care in Calipatria. Under these circumstances, the threat of future injury to Plaintiff can only be characterized as conjectural and hypothetical, rather than real and immediate. Such speculation is insufficient to confer standing.

Second, even if Plaintiff's transfer to Calipatria was imminent, his threat of injury is not. In fact, his threat of injury is extremely low. This is because Plaintiff, as someone "with a prior history of cocci," is generally "immune to subsequent

1 infection." *Plata v. Brown*, No. C01–1351 TEH, 2013 WL 3200587, at *14 (N.D. Cal. June 24, 2013). Thus, even if Plaintiff returns to Calipatria, and even if Calipatria has not implemented any of the preventive measures Plaintiff has requested, he still has not established a likely prospect of future injury. Absent this prospect, Plaintiff's request for a forward-looking injunction is predicated only on past harm. Thus, Plaintiff cannot demonstrate the direct, personal stake in the outcome of the case required for Article III standing.

Finally, Plaintiff's suggestion that he can establish standing on the grounds that he must depend on the CDCR-wide healthcare system for treatment for the foreseeable future reflects a misunderstanding of standing doctrine. Plaintiff reasons that because he will continue to endure inadequate medical care at the hands of the CDCR regardless of the specific CDCR prison at which he is incarcerated, he therefore has a personal interest in relief that would improve medical care at *any* of the CDCR prisons. The problem, however, is that Plaintiff "seeks to rectify existing inadequacies in preventative health care policies and procedures at Calipatria State Prison" (Pl.'s Obj. 4:1–4)—a prison at which he is not incarcerated and to which he has no immediate prospect of transfer. Reliance on the deficiencies of the CDCR-wide healthcare system does not give Plaintiff a sufficient stake in requesting injunctive relief specific to Calipatria. Indeed, if the Court were to grant the injunction and order the implementation of the requested policies at Calipatria, such relief would have no bearing on Plaintiff, who is incarcerated at California State Prison, Solano. Put another way, Plaintiff's claim cannot support standing because the relief sought—changes in notification and preventative care procedures at Calipatria—would not redress Plaintiff's injury.

"The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 (1976). Plaintiff is not incarcerated at Calipatria, does not allege that he is likely to return to Calipatria, and

1  is not seeking relief that, if granted, would redress the injury suffered. Accordingly,
2  Plaintiff does not have standing for the injunctive relief he seeks.

3       The Court turns now to Plaintiff's objection that his claim for injunctive relief
4  involves a different class and different relief than the ongoing *Plata v. Brown* class
5  action, and so is not precluded by that action.

6       **B. The Magistrate Judge Properly Found that Plaintiff's Claim for**
7       **Injunctive Relief is Duplicative of *Plata v. Brown***

8       *Plata v. Brown* was filed as a class action in 2001 by ten California state
9  prisoners alleging, among other things, that the CDCR medical care system did not
10 meet constitutional standards. First Amended Complaint, *Plata v. Brown*, No. C-01-
11 1351 THE (N.D. Cal. Aug. 1, 2001). After the action commenced, "the State
12 conceded that deficiencies in prison medical care violated prisoners' Eighth
13 Amendment rights." *Brown v. Plata*, 563 U.S. 493, 131 S.Ct. 1910, 1926 (2011). In
14 2002, the *Plata* court approved a joint stipulation for injunctive relief in which the
15 parties agreed that the *Plata* class "consists of all prisoners in the custody of the
16 CDC[R] with serious medical needs except those incarcerated at Pelican Bay State
17 Prison." Stipulation for Injunctive Relief ("*Plata* Stipulation"), *Plata v. Davis*, No.
18 C-01-1351 THE (N.D. Cal. June 13, 2002).  Ultimately, the State failed to comply
19 with the injunction, and the court appointed a receiver to oversee the systemic reform
20 of medical care in the California prison system. *See Plata v. Schwarzenegger*, No.
21 C01-1351 THE, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005). The receiver continues
22 to oversee the implementation of these remedial efforts. It is against this backdrop of
23 ongoing systemic reform of medical care in California prisons that Plaintiff brings
24 his claim for injunctive relief.

25      "A district court may decline to exercise jurisdiction over a California
26 prisoner's claim seeking systemic injunctive relief related to medical care where the
27 allegations and relief sought are duplicative of *Plata*." *Pride v. Correa*, 719 F.3d
28 1130, 1137 (9th Cir. 2013). This same discretion applies when a California prisoner

seeks relief related to medical care on behalf of a class of prisoners. *See Pride*, 719 F.3d at 1136 (explaining that the *Plata* Stipulation allows the *Plata* defendants to assert issue preclusion and res judicata in *other litigation seeking class or systemic relief*) (emphasis in original). In assessing whether a California prisoner's claim for class-wide injunctive relief is duplicative of *Plata*, courts consider whether the prisoner's proposed class is included in the *Plata* action and the extent to which the relief requested is already provided for in that action. *See, e.g.*, *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013) (holding that a California inmate's independent claim for injunctive relief solely on his own behalf for medical care denied to him was not duplicative of *Plata* because *Plata* provides for systemic medical reform for all inmates); *Gary v. Hawthorn*, No. 06CV1528 WQH (PCL), 2007 WL 2781098, *4 (S.D. Cal. Sep. 19, 2007) (denying a California prisoner's claim for injunctive relief in the form of better medical staffing and screening procedures for all inmates because that relief was ordered in *Plata*); *see also Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979) (upholding dismissal of a California prisoner's complaint concerning overcrowding at the prison because that issue was being litigated in a pending class action). Where an inmate's claim is duplicative of *Plata* "the avoidance of concurrent litigation and potentially inconsistent results justifies dismissal." *Pride*, 719 F.3d at 1137.

The magistrate judge concluded that Plaintiff's proposed class and requested relief were duplicative of, and thus precluded by, the *Plata* action. Plaintiff objects to this finding, arguing that his class "differs significantly" from *Plata* in both membership and relief sought. This Court finds Plaintiff's objections unconvincing.

Plaintiff argues that his proposed class, which consists of "all African-American inmates who contracted valley fever while incarcerated at Calipatria State Prison, a CDCR facility" differs from the class in *Plata* because Plaintiff's class does not include inmates with "serious medical needs." (Pl.'s Obj. 2:14–18.) Instead, Plaintiff suggests that his proposed class consists of inmates who have contracted

1 | valley fever but are otherwise healthy. This argument belies a plain reading of
2 | Plaintiff's complaint. Although it is possible for a person to have contracted valley
3 | fever but not have "serious medical needs," (SAC 9:15–21), it is clear from Plaintiff's
4 | complaint that the proposed class consists of those inmates who share typical
5 | claims—i.e., inmates who have contracted valley fever and who, like Plaintiff, have
6 | serious medical needs. There is no indication that Plaintiff seeks to represent a class
7 | of inmates of which he is not a part, and this Court refuses to adopt such a tortured
8 | interpretation of the complaint.

9 |      Having settled the scope of Plaintiff's proposed class, the Court finds the class
10 | in this case to be a lesser-included subset of the *Plata* class. The *Plata* class "consists
11 | of all prisoners in the custody of the CDC[R] with serious medical needs, except
12 | those incarcerated at Pelican Bay State Prison." (*Plata* Stipulation ¶ 8). Plaintiff's
13 | proposed class consists of all African-American prisoners who contracted valley
14 | fever while incarcerated at Calipatria, a CDCR facility. Considering Plaintiff brings
15 | this action on behalf of inmates with typical claims, there is no part of Plaintiff's
16 | proposed class that falls outside, or can otherwise be distinguished from, the class in
17 | *Plata*. The *Plata* class includes *all* CDCR inmates with serious medical needs, while
18 | Plaintiff's proposed class consists of a subset of CDCR inmates with serious medical
19 | needs stemming specifically from valley fever. Accordingly, this Court agrees with
20 | Judge Dembin that "[t]he class Plaintiff seeks to represent is included in the *Plata*
21 | class and is therefore duplicative of the *Plata* class." (R&R 9:17–19.)

22 |      Plaintiff also objects that the relief he seeks—notification and other
23 | preventative measures to protect inmates from exposure to valley fever—differs from
24 | the relief provided for in *Plata*, which Plaintiff sees as limited to the "*delivery* of
25 | medical care." (Pl.'s Obj. 2:20–24) (emphasis added). Plaintiff is incorrect. Although
26 | delivery of medical care is a critical component of the systemic reforms sought by
27 | the *Plata* class, the *Plata* litigation includes claims for injunctive relief to reduce the
28 | incidence of new valley-fever infections in California state prisons. For example, not

only has the *Plata* court ordered the CDCR to exclude from certain prisons inmates who are at high risk for developing severe valley fever, the CDCR also has "[i]mplemented cocci education programs for inmates and staff at CDCR prisons." *Plata v. Brown*, 2013 WL 3200587, at *4. In other words, preventive measures to reduce the incidence and severity of valley fever among California inmates—the very relief Plaintiff seeks here—is already provided for by *Plata*. Plaintiff's request for relief is thus duplicative of *Plata*. Accordingly, the Court dismisses Plaintiff's claim for injunctive relief.[3]

### III. CONCLUSION & ORDER

Although the magistrate judge assumed without deciding that Plaintiff had standing to bring his claim for injunctive relief, this Court finds *sua sponte* that Plaintiff fails to satisfy the requirements for constitutional standing. Plaintiff has not demonstrated (1) a real and immediate threat of injury, (2) traceable to Defendants' conduct, that (3) would be redressed by a court order granting the requested relief. Accordingly, the Court **GRANTS** Defendants Motion to Dismiss (ECF No. 72) and **DISMISSES WITH PREJUDICE** Plaintiff's class claim for injunctive relief.

The Court agrees with the Report's finding that if Plaintiff did have standing, then the *Plata* action precludes his claim for injunctive relief. After reviewing *de novo* Plaintiff's objections on this point, the Court finds that Plaintiff's proposed class and requested relief are duplicative of, and thus precluded by, the ongoing class action in *Plata*. Accordingly, the Court **ADOPTS** this portion of the R&R.

**IT IS SO ORDERED.**

DATED: December 10, 2015

Hon. Cynthia Bashant
United States District Judge

---

[3] Incidentally, a mass cocci skin testing campaign is being carried out throughout the California prison system to screen all inmates for the risk of valley fever. Notice of Filing of Receiver's Twenty-Ninth Tri-Annual Report, Case Nos. C01-1351 THE, CIV S-90-0520 KJM-DAD, and C94-2307 CW, Doc. 2858, (N.D. Cal. June 1, 2015) (E.D. Cal. June 1, 2015).